UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**WARREN INDUSTRIES, INC.,**

    **Plaintiff,**                                  **Civil Action No.: 13-CV-13026**

    **vs.**                                          **District Judge Stephen J. Murphy, III**

**PMG INDIANA CORPORATION and**   **Magistrate Judge Mona K. Majzoub**
**PMG OHIO CORPORATION,**

    **Defendants.**
_____/

### OPINION AND ORDER GRANTING IN PART
### PLAINTIFF'S MOTION TO COMPEL [20]

This matter comes before the Court on Plaintiff Warren Industries, Inc.'s Motion to Compel Defendants PMG Indiana Corporation and PMG Ohio Corporation's Full and Complete Responses to its Requests for Production of Documents.  (Docket no. 20.)  Defendants filed a Response to Plaintiff's Motion (docket no. 24), and Plaintiff filed a Reply to Defendants' Response (docket no. 26).  The parties also filed a Joint Statement of Resolved and Unresolved Issues, which indicates that the parties have not resolved the issue in Plaintiff's Motion.  (Docket no. 29.)  The Motion has been referred to the undersigned for consideration.  (Docket no. 22.)  The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

**I.**     **Background**

Plaintiff filed its complaint on July 15, 2013, alleging that the parties entered into five contracts in 2007 for the sale of a combined total of 8,607,000 specially manufactured parts over a seven year period.  (*See* docket no. 1.)  Plaintiff further alleges that, after purchasing only 30% of

the parts, Defendants stated that they would not be making any further purchases. (*See* docket no. 19.) According to Plaintiff, Defendants' failure to satisfy their contracts with Plaintiff was a result of the termination of a separate contract between Defendants and General Motors, which was directly related to the parts Plaintiff was supplying. (Docket no. 20 at 10.) Plaintiff claims that Defendants have committed a breach of contract, resulting in almost three million dollars in damages, including lost profits, interest, costs, and incidental and consequential damages. (Docket no. 19 at 9, 10.)

Plaintiff served its First Request for Production of Documents on Defendants on November 8, 2013. (Docket no. 20 at 10; docket no. 20-6.) This request sought, among other things, all of Defendants' e-mail communications relating to: (1) Plaintiff; (2) the contracts between the parties; and (3) the contracts between Defendants and non-party General Motors. (*See* docket no. 20-6.) Defendants served their Objections and Answers to Plaintiff's First Request for Production of Documents on December 20, 2013. (Docket no. 20 at 10.)

On January 14, 2014, Plaintiff notified Defendants of deficiencies in their production of documents, specifically the absence of e-mail communications from Dr. Michael Krehl, Chairman of the Board for all PMG companies. (Docket no. 20 at 10; docket no. 20-8.) Plaintiff then provided a redefined request for supplemental production on February 7, 2014. (Docket no. 20-9.) Defendants responded to this supplemental request by providing 26,000 additional documents. (Docket no. 20-10 at 3.) Defendants also explained that Dr. Krehl's e-mails were not available because they were stored in Germany on a different server that did not belong to PMG Indiana. (Docket no. 20-10 at 2; docket no. 20-11 at 2.)

Plaintiff deposed Dr. Krehl on May 19, 2014. (Docket no. 24-3.) In his deposition, Dr.

Krehl testified that he did not have any unique personal knowledge regarding Plaintiff's claims. (*Id.* at 6, 9.) Then, in an effort to determine the location and accessibility of Dr. Krehl's e-mails, Plaintiff deposed Defendants' Information Technology Manager, Justin Elkins, on May 29, 2014. (Docket no. 20 at 11; docket no. 24-4.) Mr. Elkins testified that since the end of 2011, all of the e-mails of PMG employees, including those of Dr. Krehl, were stored on the same server in Germany. (Docket no. 24-4 at 4-5, 8-9.)

Following the depositions, Defendants still declined to produce Dr. Krehl's emails. (Docket no. 20 at 12.) Plaintiff then filed its Motion to Compel on June 4, 2014. (Docket no. 20.) Defendants responded to the Motion on June 18, 2014 (docket no. 24), and Plaintiff replied to Defendants' Response on June 25, 2014 (docket no. 26). On July 28, 2014, the parties filed a Joint Statement of Resolved and Unresolved Issues with regard to the instant Motion. (Docket no. 29.) According to the Joint Statement, the sole issue is, "[w]hether Defendant[s] must produce full and complete responses to Plaintiff's first requests for production of documents, including all responsive email communications of Michael Krehl for the time period of January 1, 2006[,] through present." (*Id.* at 2.)

## II. Governing Law

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." Fed.R.Evid. 401. But the scope of discovery is not unlimited. "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Rule 34 allows a party to serve requests for production of documents on an opposing party. Fed.R.Civ.P. 34. A party receiving this type of discovery requests has thirty days to respond with answers or objections. Fed.R.Civ.P. 34(b)(2)(A). If the party receiving a discovery request under Rule 34 fails to respond properly, Rule 37 provides the party who sent the discovery the means to file a motion to compel. Fed.R.Civ.P. 37(a)(3)(B). If a court grants a Rule 37 motion to compel, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust. Fed.R.Civ.P. 37(a)(5)(A).

**III. Analysis**

    **A. Relevance**

First, Plaintiff argues that Dr. Krehl's e-mails are relevant and should be produced because: (1) Dr. Krehl held high executive positions within Defendants' companies during the period in question; (2) his deposition testimony indicated that he had knowledge related to the termination of the contracts between PMG and General Motors, the details of which are directly relevant to the claims of this case; and (3) Defendants have produced documents which indicate that Dr. Krehl was involved in relevant communications and took part in meetings and decisions related to the contracts. (Docket no. 20 at 13.) Based on a review of the email correspondence among Dr. Krehl

4

and other PMG employees attached to Plaintiff's Motion (docket nos. 20-15, 20-16, 20-17, and 20-18), the Court agrees with Plaintiff that Dr. Krehl's e-mail communications are relevant and reasonably calculated to lead to the discovery of admissible evidence.

### B. Defendants' Arguments Against the Production of Dr. Krehl's E-mails

Plaintiff alleges that Defendants have been uncooperative in complying with Plaintiff's discovery requests despite the fact that Dr. Krehl's e-mails are relevant. (Docket no. 20 at 14.) Additionally, Plaintiff alleges that Defendants have changed their reasoning as to why they have been unable to produce the requested documents. (*Id*. at 13-14.) Plaintiff elaborated that Defendants originally claimed that they were unable to produce Dr. Krehl's e-mails because they had not been stored on the same server as the e-mails of PMG Indiana's other employees. (*Id*. at 13.) Plaintiff alleges that Defendants' reasons for their refusal to search for and produce Dr. Krehl's e-mail communications changed after the depositions of Mr. Elkins and Dr. Krehl. (*Id.* at 13-14.)

Defendants' arguments against the production of Dr. Krehl's e-mails are: (1) during Dr. Krehl's deposition, he gave no indication that he had been involved in any relevant e-mail correspondence; (2) after searching the e-mail communications of other employees, a substantial number of documents have already been produced; therefore, producing Dr. Krehl's e-mails would be duplicative of materials already produced; and (3) Defendants do not have access to or control of Dr. Krehl's e-mails because they are kept on a separate server in Germany. (Docket no. 24 at 8-13.)

#### 1. Dr. Krehl's Personal Knowledge

First, Defendants contend that although Dr. Krehl is the Chairman of the Board for all PMG

5

companies, his deposition testimony has shown that he does not possess any unique personal knowledge of the facts relevant to this matter. (*Id*. at 8.) Specifically, Defendants argue that during Dr. Krehl's deposition, he testified that he was not involved in selecting Plaintiff as a supplier or in the contract negotiations between the parties, that he had not reviewed any quotes or purchase orders related to the contracts, and that he did not sign off on the contracts with Plaintiff. (*Id*. at 8-9.) Defendants further allege that Dr. Krehl's only involvement with this issue occurred when he attended a meeting with two General Motors representatives. (*Id*. at 10.) According to Defendants, the only discussion during the meeting relevant to the contracts at issue was a request that Defendants made for higher prices. (*Id.*) Defendants assert that this limited involvement is insufficient to justify searching through eight years of Dr. Krehl's e-mail communications. (*Id.*)

Plaintiff responds that Dr. Krehl's testimony that he does not have any "unique personal knowledge" of the facts of the case is not the standard for determining if documents should be produced following Plaintiff's valid request for production. (Docket no. 26 at 2.) Plaintiff warns that if the court follows this flawed reasoning, an individual's e-mails would become non-discoverable simply by testifying that he or she does not have any recollection or "unique personal knowledge" of the facts at issue. (*Id.*)

The Court agrees with Plaintiff that Defendants' arguments regarding Dr. Krehl's unique personal knowledge are flawed. The fact that Dr. Krehl testified to having no unique personal knowledge of the contracts or the relationships between the parties is not the standard for determining if a discovery request should be compiled with. Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). As discussed

above, Dr. Krehl's e-mails are relevant and reasonably likely to lead to the discovery of admissible evidence. Furthermore, if the Court were to allow Defendants to avoid producing the requested documents based on this testimony alone, it would erode the principles of discovery, allowing any future party to avoid producing documents simply by testifying that they have no recollection or no unique personal knowledge of the facts. Therefore, Defendants' attempt to avoid producing Dr. Krehl's e-mail communications based on his attested lack of personal knowledge fails.

### 2.     Dr. Krehl's E-mails Have Already Been Produced

Next, Defendants claim that any of Dr. Krehl's responsive e-mail communications would have already been provided in the production of the e-mail communications of Defendants' other employees. (Docket no. 24 at 10.) Specifically, Defendants contend that requiring the production of Dr. Krehl's e-mails would violate Rule 26(b)(2)(C), because it would be unreasonably cumulative and duplicative of information that has already been produced through other sources. (*Id.* at 10-11.) Plaintiff counters Defendants' arguments by pointing out that a search of Dr. Krehl's e-mail correspondence has never been conducted and, therefore, Defendants cannot attest that Dr. Krehl's responsive e-mail communications have already been produced. (Docket no. 26 at 4.)

The Court agrees with Plaintiff that without conducting a separate search of Dr Krehl's e-mail files, Defendants cannot definitively claim that all of Dr. Krehl's responsive e-mail communications have already been produced through the e-mails of other employees. Furthermore Dr. Krehl may have been involved in communications with individuals or third parties that were not the subject of Plaintiff's search requests, in which case those communications would not have already been produced. Unless Defendant is willing to search the emails already produced, and then separate out Dr. Krehl's emails that would be duplicative of the totality of Dr. Krehl's responsive

emails, requiring the production of Dr. Krehl's responsive e-mails would not be unreasonably cumulative or duplicative, and Defendants' argument to the contrary fails.

### 3. Dr. Krehl's E-mail Communications Are Held on a Server that Defendants Do Not Have Access to or Control Over

Lastly, Defendants argue that they do not have access to Dr. Krehl's e-mails because they are stored on a server in Germany, which the Defendants do not own, and to which Defendants do not have access, and over which they have no control. (Docket no. 24 at 12.) Defendants claim that the only way they can access the individual e-mail communications of its employees is by searching the server at an employee's individual workstation in Indiana, and because Dr. Krehl works in Germany, a search of his e-mail is not possible. (*Id.*) Plaintiff argues that the fact that electronic documents are physically located in a different country does not mean that they are not under Defendants' control. (Docket no. 26 at 5.) Also, Plaintiff points out that Defendants have shown an ability to access and control the majority of the documents they request, yet they have continually failed to produce the e-mail communications of Dr. Krehl. (*Id.* at 5-6.)

Currently, there is one server that holds the e-mail correspondence for all PMG employees, both domestic and international, and this server is located in Germany. (Docket no. 24-4 at 5, 8-9.) While Defendants' Information Technology Manager may not be able to access Dr. Krehl's e-mails from the Indiana location, Dr. Krehl, as Chairman of the Board of PMG Indiana, indeed has possession, custody, and control over his own e-mail communications, regardless of where the server containing these e-mails is located. Therefore, Defendants' argument that they do not have access to Dr. Krehl's e-mails because they are kept on a server that they do not own or control fails.

Accordingly, the Court will grant Plaintiff's Motion to Compel, in part. Defendants will produce all of Dr. Krehl's responsive e-mail communications from January 1, 2006 through December 1, 2013, within 30 days of this Opinion and Order. To the extent Plaintiff seeks full and complete responses to its entire First Request for Production of Documents, the Court will not address Plaintiff's request as the pleadings only discuss the e-mail communications of Dr. Krehl.

### C.     Plaintiff's Request for Attorney's Fees and Costs

Finally, Plaintiff asks the Court to award it the attorney's fees and costs that it incurred in bringing the instant Motion to Compel. (Docket no. 20 at 15.) Plaintiff asserts that Defendants violated Rule 34 by repeatedly refusing to conduct Plaintiff's requested search or produce the requested documents. (*Id.*) Defendants contend that their position was substantially justified, and it would be unjust to award Plaintiff attorney's fees and costs, even if Plaintiff's Motion to Compel were granted. (Docket no. 24 at 13.)

The Court finds that Defendants' failure to comply with Plaintiff's request for production of Dr. Krehl's e-mail communications was not substantially justified. Defendants acted unreasonably in the course of discovery by repeatedly refusing to produce documents within their possession, custody, and control, and their actions have resulted in unnecessary delay. Therefore, the Court will order Defendants to pay Plaintiff's reasonable expenses and attorney's fees pursuant to Fed. R. Civ. P. 37(a)(5). The Court will also order Plaintiff to submit a Bill of Costs.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel [20] is **GRANTED IN PART** and **DENIED IN PART**. Defendants will produce all of Dr. Krehl's responsive e-mail communications from January 1, 2006 through December 1, 2013, within 30 days of this Opinion

and Order. To the extent Plaintiff seeks full and complete responses to any other items in its First Request for Production of Documents, Plaintiff's request is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants pay the reasonable expenses and attorney's fees incurred by Plaintiff as a result of bringing the instant motion. Plaintiff is ordered to submit to the Court a Bill of Costs itemizing the same within 21 days of this Opinion and Order, at which time the Court will determine the amount of costs and fees for which Defendants are liable.

## NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of 60 days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: November 5, 2014         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated:  November 5, 2014        s/ Karri Sandusky
                                Case Manager